Good morning, Your Honors. My name is Colleen Bow, and I'm here on behalf of the Plaintiff Appellant, GIS. The District Court made two summary judgment rulings against GIS that are the main focus of this appeal. Number one, the ruling on how the purchase quotas were to be measured, and number two, on the coverage of the electronic warranties, which are referred to in this case as EFPPs. I'd like to start with the quotas. There was a fundamental mistake here. The District Court made a fundamental mistake on the quotas. With respect to the quotas, GIS was a moving party. GIS sought summary judgment based on the theory that, by virtue of the party's 25-year course of performance, the contracts were no longer subject to the per-territory quotas as written in the agreements, and instead were subject to a single aggregate quota across all of the territories. And that was because of a waiver or estoppel theory, right? We argued waiver, estoppel, and implied modification in... Where did you argue implied modification in the District Court? We argued implied modification in our opening brief at pages in the record ER444 to 46. Is that just by your citations to Wagner and 1303, or did you actually use the words implied waiver? Can you explain what you think you argued? What we argued was that the party's conduct for 25 years had been antithetical to the agreements, and that under California law, that resulted in implied waiver, estoppel, and implied modification. Where did you say it led to implied waiver? Implied waiver? I'm sorry, to implied modification? Implied modification. By citing to, by the argument and discussion, and by citing to the controlling statute, which is California Commercial Code 1303F, and by citing to the leading case, the Wagner case, which is the same case that the District Court relied upon in the jury instructions when it... The paragraph that... I mean, I thought you were going to say that because that's what you said in your brief here. Yes. But the Wagner and 1303 cites come in a discussion that says the doctrine of estoppel further provides, and then you cite these things. So it seems like it was about estoppel and waiver, not about implied modification. Your Honor, I believe that we raised it sufficiently in the manner that we did, but I'm pointing to you, and you understand what we're relying on. But the point that I, I think the bigger point here is that even if we had not moved on implied modification, we certainly weren't required to bring a motion on implied modification. We were not required to file any motion on summary judgment. And the big problem here is that that should have had no effect at trial. Whether or not we brought that motion should not have foreclosed us from arguing implied modification at trial, because we weren't required to argue implied modification. We should not have, by bringing a motion, we should not have been foreclosed from any of the arguments that we wanted to bring at trial. And what happened here is when the District Court denied our motion, it should simply have denied the motion, and the case should have gone to trial. Instead, the Court foreclosed us from presenting any, any, any evidence or argument on these theories. But what's weird to me is the, the waiver and estoppel arguments are both premised on the idea that you had to depart from a clear meaning before, and that the clear meaning was that there were territory-by-territory quotas, right? So that was, that was the, that was what was written in the agreements, and it was the conduct was antithetical to the language in the agreements. That's correct, Your Honor. But so there was this premise, though, that the language itself was about territory-by-territory agreements. One of the things that I, territory-by-territory quotas, one of the things that I'm struggling with is kind of why you argued it that way, because it seems like it might have been more natural to start from the beginning and say this contract is ambiguous. Here's our course of conduct to interpret this contract that's ambiguous, but I don't think that argument has even been made now, ever, that like just from the very beginning this was an ambiguous contract. It doesn't have to be an, an ambiguous contract. In fact, what we're talking about is, is where you, we were saying even if the contract can be read as having per-territory quotas, this antithetical course of performance that has gone on for 25 years changes the rules. But the arguments you made about that in the district court were these waiver and estoppel ones which depended on your opposing party knowing that you weren't actually going territory-by-territory in terms of quotas. Well, I'd say a couple of things about that. What, what, what, what, what they were, what Guardian was required to know was that the terms in the agreement required, had a per-territory quota. They not only ignored the per-territory quota, they substituted the aggregate quota. What they did was they had monthly reports that tracked and measured our compliance against an aggregate quota. And they didn't know that you weren't actually complying with the territory-by-territory quotas, right? Well, they did know because they were substituting a different quota. Well, they might have been both consistent. You could have been meeting, I mean, the, the point of aggregate is it adds up the territory-by-territory, right? So you could have been complying with both. Well, let me say this. There is evidence in the record that was not the basis for our summary judgment motion, and again, I think the bigger problem here were the procedure problems on summary judgment. But there was evidence in the record of not merely the ignoring the per-territory quota and substituting and measuring us by an aggregate quota, but of an express agreement to treat the quotas as an aggregate quota and not as a per-territory quota. That was evidence. There's evidence that was in the summary judgment record, not the basis for our summary judgment motion, because we were trying to win summary judgment on what we thought was undisputed facts. And so we came forward with what we came forward with, saying, here's a course of performance. Based on this course of performance, we are entitled to win on our theories of implied, implied waiver, estoppel, and I also believe implied modification. We didn't come forward with all of the evidence, all of, all of the relevant evidence. We only came forward with what we thought was undisputed. We wouldn't, we, there was other, a whole universe of other evidence related that was disputed or that might have been disputed, including evidence of the express agreement. That was not the basis for our summary judgment motion. We would have left that for trial. And the problem here is that we made a motion, the district, a motion for summary judgment. The district court denied it. It shouldn't have affected, that should have been it. Okay, we go to trial. But instead, the district court, instead of just denying the motion, the district court made a statement in the context of denying our motion. The district court said, I think these quotas should be treated as per territory and not in the aggregate. It then treated that statement, again, made in the context of denying our summary judgment motion, as a dispositive ruling against us. It then, in effect, granted summary judgment on that basis, a partial summary judgment, sua sponte, to Guardian. Because what it did then was- Can I ask, so it seems that the premise, again, of the arguments you made on summary judgment, was that the language was clear that it was territory by territory, but that there had been a waiver or estoppel. But that going back to the original language of the contract, it was clear that it was territory by territory quotas. We said that even if it is territory by territory, we made an argument and we said even if it's territory by territory, by waiver, implied waiver, estoppel, and I believe implied modification, I hear that you do not. We made that argument, it should be viewed as a per territory quota. Sorry, an aggregate quota. But if the court understood you to think the language is clear, is there something that you could have done later that would have changed the clear language? Yes. What? As I said, implied modification, implied waiver, and estoppel are all theories under California law that change that language, that as a result of conduct, guardian's conduct, antithetical to the language in the agreement for 25 years, guardian relinquishes the right to require compliance. But you're saying, let's take that you, in summary judgment, didn't argue implied modification. That shouldn't have foreclosed you from arguing implied modification at trial. Absolutely, nothing that we argued on summary judgment should have foreclosed us, because the court was simply denying our motion. A denial of a summary judgment motion should have no effect on what we're allowed to argue at trial. And what I'm also saying is that we didn't argue everything on summary judgment. We argued the stuff that we had that we thought we could win based on an undisputed evidence. There's a whole universe of other evidence that we could have brought, including of this express agreement. But we didn't move on the express agreement because we thought that might be disputed. We didn't want to get into the he said, she said. We should never have been foreclosed by virtue of a denial of summary judgment. Counselor, at the point you were foreclosed, was there a cross motion for summary judgment? There was a cross motion, but it was based on a very narrow issue. The only issue that Guardian moved on was a supposed lack of recoverable damages. And that was a motion that the district court properly denied. And so we had no, if we treat this, again, this was a statement that the court made in the context of denying our motion. There was no cross motion on the quotas. Correct. Saying they were entitled to partial summary judgment on that, right? Absolutely correct, your honor. And that is my point. That what the court did here is it took a denial of our motion, made a statement in denying it, and then treated that denial as if it were granting a motion sua sponte to Guardian on that issue. Without giving us the required notice and opportunity. Notice that the sufficiency of our contentions were at issue. An opportunity to respond. Because if it had given us the required notice and opportunity, there was all this other evidence that we could have come forward with, including evidence of an express agreement. Counsel, if I can ask a question. Certainly. Apart from the quota issue, you had these two other issues. Correct. That were main issues. One was on the commission on BOPS. That's right. As I understood your brief, they were saying there was no consideration, but you were saying that percentage was part of a settlement agreement of claims. Yes. And what were the, I just want to understand what exactly were the claims being settled. When they wanted, when Guardian wanted to sell to BOPS directly, was your client saying that would violate their exclusive distributor rights? That's correct, Your Honor. Something else. Yes. It would be a violation of the exclusivity because the contracts are exclusive, our exclusivity are exclusive as against everyone, including Guardian. So when Guardian was selling into our territories, it was a violation of the contracts. And did you file a suit on that or make a demand with a demand letter? We had a dispute about it. We met, we've had letters, emails back and forth, and then we settled that dispute with this agreement that is in, it's written in emails, whereby we permitted GIS to sell in our exclusive territories in exchange for a percentage of the sales. Okay, and I understand that now and it makes, I understand the business context in which that kind of thing seems often to be done. Let me ask this though. You had this third claim that you stressed about the, whether the electronic warranties were covered products. Could you just briefly address that? Yes. So the district court ruled on summary judgment that EFPPs, the electronic warranties, were not covered under three of the party's nine agreements, the Florida, Cook County, and Mid-Atlantic agreements. And it relied exclusively on a provision that appears in all nine of the agreements that it referred to as the product language. And the product language raises this question of what the attached exhibits say, the exhibits attached to the agreements say are the covered products. The district court singled out those three agreements because they had exhibits attached, but those exhibits did not say EFPPs on them. It did not rule on the other six agreements because the other six agreements didn't have exhibits. And so the court took that to mean that it was going to let those go to trial. So again, the court's ruling here on the product language. But Guardian did not move for summary judgment on the product language. It not only didn't, it couldn't. Because its witnesses testified at trial, they admitted that the product language had nothing whatsoever to do with whether products were covered under the agreements. They testified at trial that instead, Guardian had dispensed with dealing with exhibits back in 1990, which explains why those six agreements didn't have exhibits. And instead had replaced them with a single price list that it updated. That price list applied to all of the territories equally. And that price list listed EFPPs. So I thought that they did, weren't there cross motions on the EFPP issue at summary judgment? There were cross motions, but they did not raise this issue. The issue of the product language was raised only by the court. So what is your understanding of the basis of their cross motion? Their cross motion was based on different language of the different provision of the contract. It was based on two grounds. One, it said these are not covered products because they are underwritten by a third party and not by Guardian. And two, they said these are not covered products because they don't say Guardian on the front panel of a label. Because they were electronic products and not physical products. Those were the only two grounds they raised. So they could not have raised, again- Yes. And so you had an opportunity then to discuss what the attachments or exhibit, the addendum or whatever it's called, what the products meant at that point, right? Well, what happened was the court said, I'll give you until noon tomorrow to submit the exhibits. And what we did was we submitted a price list and we said, the world has moved, the Guardian has moved on. They're not using exhibits anymore, they're using the price list. But the court ignored that and said, if you wanted to talk about this, you should have talked about it in your summary judgment brief. But of course, we couldn't have because the product language wasn't an issue on summary judgment. This wasn't an issue raised by Guardian. It wasn't an issue that Guardian could have raised. Because as Guardian's witnesses ultimately testified at trial, the product language and the attached exhibits were not relevant. We had moved on to price list. And so the court sui sponte raises this issue after we finished our briefing. And we didn't have an opportunity. We didn't have a notice and an opportunity to respond on that issue. Thank you very much. Thank you. We'll give you a couple of minutes for rebuttal. Thank you. Good morning, your honors. May it please the court, Calvin Davis for Appalese. I wanna just start by correcting, I think, a couple of misstatements about the procedural history here that were just made. First of all, on the quotas, there were cross motions. Both sides made motions for partial summary judgment on that issue. So the issue of- Your motion was just about damages, wasn't it? It addressed damages, your honor. But to address the damages issue, both parties, both in their motion and in their motion, they had to interpret the quota language, which the court did. And that's the ruling at reach. So there were definitely cross motions. The second misstatement, your honors, is the argument that somehow plaintiff here, appellant, was foreclosed from arguing implied modification at the trial. That what happened at the summary judgment stage, and it's very careful, we have to be very careful here to separate what happened at summary judgment and what happened at trial. I think there's some conflating there and some confusion going on there. So the court ruled with respect to certain contracts that were before it on the summary judgment that the quotas were monthly and by territory. It also ruled on certain contracts that were before it that electronic warranties were not included within those contracts definitions of guardian products because of the exhibit A language, and those contracts had exhibit A's. However, plaintiffs were free to and did try implied modification in front of this jury on the other contracts that weren't addressed. So cross motions on quotas were absolutely made, and they were not foreclosed from arguing implied modification in front of the jury on the parts of the contracts that were not addressed by the court. But on implied modification, which is one of, I think, the two main arguments they're making here along with that the court ruled sui sponte. On implied modification, the court asked a question about why didn't you just start with this argument, basically, and I think I know the answer to that. When you're suing for breach of contract, and whether it's at trial or at summary judgment, it's a much more appealing, powerful argument to say, this language is clear. You don't need extrinsic evidence. You don't need anything else. Look at the language. And then what happened here is they relied on that argument along with some waiver and go against the idea the language is, well, it's sort of semi, almost contradictory. But at any rate, they made the argument about a waiver and a stopple in front of the trial court of summary judgment. The court ruled against them and said, I don't think so. I think the clear language here says that monthly and per territory quotas. I think the clear language says, with respect to these particular contracts, it also says electronic warranties aren't part of this. So I think, frankly, what happened here is counsel and plaintiff regrouped and said, that argument's not working, and we better come up with a new argument, which is implied modification. But there is nothing in the summary judgment record that shows they raised implied modification. Did they raise course of conduct? They did raise course of conduct. Why isn't course of conduct evidence of implied modification or of the interpretation which the parties placed on the language of the contract? The contract can say, we will sell you only black diamonds, right? But the course of conduct can be that they bought only white diamonds. That's a classic case from law school. Now, why isn't that a course of conduct which interprets black to mean white? I understand Your Honor's question, and they did raise course of conduct. We're not disputing that. But when you raise course of conduct to interpret language, the language has to be reasonably susceptible of the meaning of the claim. Is black interpreted to mean reasonably susceptible to mean white? I don't think it can be, Your Honor. Well, but it is. We've had cases on it, and diamond merchants deal just in that way. Yeah, and I think, Your Honor, what you're asserting right now, that's an implied modification argument, where someone says, even though the language says white, the course of conduct of the parties is black. Absolutely. And if they raised implied modification, they'd be entitled to raise that. Their argument now- If they introduce the evidence of implied modification and come along later to state the legal argument, phrase it as implied modification, can't we take that into consideration because it's only a legal issue? I think, Your Honor, what you have to look at is what was their argument now, Your Honor, is that the main clear error made by the district court is that she ignored their argument on implied modification. That is just incorrect. The argument they made before the court was waiver and estoppel, not implied modification. And so, when you look at the record before the court- Can't we look at the implied modification because it is a legal theory which is raised for the first time on appeal? No, Your Honor. I think you have to look at, there has to be some- Do you have a case that says we can't look at implied modification as the evidence is sufficient because it's raised for the first time as an idea on appeal? I think, Your Honor, the cases we've cited at the court show that they have to come up with some argument why it would be manifest injustice or there's some excuse for bringing that argument. So, basically, what they're trying to say is, from day one, these contracts were impliedly modified, right? Except they don't make that. They make no such statement in their pleadings. It's not an affirmative defense to our counterclaim. And I think the most significant proof that they had never raised implied modification is they moved to reconsideration on the court's denial of their summary judgment motion, where they have an opportunity to bring clear errors of law to the attention of court. They never mentioned implied modification because it wasn't part of their legal strategy. It was on a motion of summary judgment, not a trial. You agree with Ms. Ball that they're not limited to the theories that they used for the motion of summary judgment at trial? Other than law of the case, Your Honor. There are certain issues of law of the case which the court decides. Counsel, Judge Gould, could I interject on that? I don't really understand the law of the case argument based on what the court said. If the court has a motion for summary judgment from GPP or GIS saying that they should win on the quotas being aggregated, and there's no cross motion on that at that time on that issue, then the court makes a statement in resolving the motion that was filed saying, it looks to me like these are by state separate quotas, why wouldn't we think that statement is based on viewing the evidence in the light favorable to your client as the non-moving party on the motion that was filed, and why would that be law of the case at a trial? Okay. Respectfully, Your Honor, there were cross motions on the, there were sort of mirror image claims. Plaintiffs brought a claim for wrongful termination, we brought a counter claim for breach of contract, and they're really mirror images of each other. Both sides moved for partial summary judgment on those claims. The court was called upon then to interpret the language to determine whether there was a breach or whether there was wrongful termination. So the court looks at the language, and the breach notices were sent out based on breaches of quotas. So obviously to determine whether a quota has been breached, the district court has to look at the contracts and interpret them and determine whether or not the quotas had been breached and what the quotas actually consist of. The court looked at it. There's a great deal of detail in the district court's ruling about this. And the court specifically finds as a matter of law that these contracts are, the quotas are to be interpreted as monthly and by territory. And it specifically reaches that ruling. It's not a casual statement. It's not an offhand statement. The court rules in the case and in the decision as a matter of law, I find that these quotas are monthly and by territory. That becomes law of the case and is not going to be departed from absent and abusive discretion. And that was litigated subsequently. There were arguments at trial about law of the case. There were arguments about jury instructions that were given to the jury based on law of the case. And the court found that the subsequent litigation of this case was governed very significantly by those rulings on law of the case. And she was not going to go back on the decision she made because she told the parties at the time it was essentially law of the case. And so that decision never changed. So, but the court did do this. The court decided that these contracts meant that the quotas were by territory. Right. But I think that's some kind of legal determination that would be reviewed de novo by us, right? Correct. So what if we look at this contract and think this is totally ambiguous, whether it's territory by territory. So probably we should look at the course of conduct. Why can't we do that at this point and say, well, the party's course of conduct was look at the quotas and the aggregate? Because what was, I think the court has to, the court is not permitted to take into account all evidence that went through this case through trial. The court has to look at the evidence and the information that was before the trial court at the time of the summary judgment motion. And implied modification wasn't raised. No such argument was made. So what is the error? There is, there is, they're arguing there is some clear error of law here. I think that there's an error in interpreting this contract. I mean, the court interpreted it and it seemed, what if, what should we do if we think, well, they interpreted it wrong? Yeah. Well, I think, Your Honor, in terms of the court's interpretation of the contracts, as was applied throughout the subsequent history of the case, I do think that's a law of the case issue. And I do think that's an abuse of discretion standard. The case can't possibly apply an appeal. On law of the case, I thought there was a definite exception if the court thinks that a prior ruling was incorrect as a matter of law. And so I'm really following up on Judge Bea's question on course of conduct. And Judge Friedland's question posed to you now, if we think there's a mistake, so why would we be bound by law of the case? Right, Your Honor. So the exceptions for law in the case are the argument that the ruling was clearly erroneous or there's a manifest injustice. First of all, appellant is citing evidence that came up at trial, not evidence from the summary judgment motion. So I don't see how there can be a finding that what the court did on summary judgment is clearly erroneous. Not only that, there is an element of prejudice. Right, but we're not, that isn't really the question. In my mind, the question is, is the court's ruling at trial that some issue is foreclosed as the law of the case? Is that clearly erroneous? Yes, Your Honor. I think I understand what you're saying, and I do think I agree with that interpretation. However, the court's ruling, I think you also have to look at some of the decision making and the reasoning of the court below, which was that there would be substantial prejudice inflicted on appellee in this circumstance because it made that ruling, it, the parties were instructed to follow that ruling through the course of the case. The parties follow that ruling through subsequent discovery and trial. And now, after the trial is over and the jury has rendered a ruling, to go back on that law of the case ruling would cause substantial prejudice. So that is something that the court took into account at the time, especially in terms of the fact that the argument that's now being made that somehow this was all before the district court is just not correct. It wasn't. So how can that be a clear error when this wasn't before the court? And the arguments, the arguments that were made to this court by appellant here were the language is clear. The language is plain. The language is, quote, unquote, crystal clear, ER 342. And they specifically called upon the court, please don't rewrite the plain language of this contract. In other words, essentially, don't modify, don't modify the contract. So the argument that was put forward to the court was don't modify it. Apply the language as written, which the court did. And for that to somehow now be an argument that there was clear error based on the record before the court, I just don't think there's, I don't think there's a basis for that. Finally, Your Honor, on electronic warranties, basically the same issue. Both parties cross moved. Both parties put before the court the interpretation of the language on electronic warranties, and the court appropriately ruled on that. And as I've already mentioned that, again, implied modification was not before the court at that time. On the sua sponte argument that's been raised, there was no sua sponte rulings by the court here, both on quotas and on applied modification on quotas and electronic warranties. Before the court was the language of these contracts, and the court was asked to interpret, how do these quotas work? What is the scope of these contracts in terms of what products they cover? So there is no sua sponte here. The issues were squarely before the court. The court ruled on it. But why was the minute order needed then? The minute order was needed because I think the court wanted some clarification on the exhibits that had been submitted. I think all that happened on our side of that was, we simply resubmitted the evidence on the contracts we had previously submitted. The court, because it was focusing on the Exhibit A language, said, I want to be sure I have a complete record here, and I'm not missing some Exhibit A's here. So we resubmitted, essentially, the contracts, and the court found there were Exhibit A's on three, no Exhibit A's on six. And so the court found that for those three, electronic warranties are not listed on Exhibit A's, and therefore, I'm going to rule that those electronic warranties are not within the scope of the distribution agreements. So we'd simply ask the court to affirm the rulings below. Thank you. Ms. Ball, we'll give you two minutes. Thank you, Your Honors. So we just heard my opponent say that we moved on, saying that the language was crystal clear and don't revise the language. That was with respect to different terms in the contract. When we were talking about the quota language, again, I point the court to ER444-46. We were arguing the course of performance had modified the terms of the agreement. And I would also say that whether or not this court believes that we raised implied modification, even if you assume we didn't, raising an argument on a motion for bringing at trial, instead, the district court denied our motion and then treated it as a dispositive ruling against us, and then had granted the other side's motion in limine to foreclose us from offering any of this evidence. So we go from a denial of a summary judgment motion, where she says, I think it's per territory, not aggregate. She should have just denied it, we're done, we're going to trial. Instead, district courts takes that language, uses it as a basis to grant their motion in limine, which is at ER 103, where the court denies us the ability to then argue to the court, the jury, that the quotas are aggregate instead of per territory. And then denies us again, and the night before trial, there was another argument relating to demonstratives, doubles down on that. That's at ER 99 to 100, and saying, I did not leave any leeway on the topic of purchase quotas, you cannot raise them. Again, based on the fact that she denied our motion, she's foreclosing us at trial. And then you see the jury instruction at ER 221, where the court says, this is an issue that's been decided. So what we have is this statement denying a motion that we brought, which the court then jujitsu's against us into a foreclosure of our ability to argue, implied modification, waiver, estoppel, and even express agreement at trial. It's a fundamental error, and that's the big mistake here. Taking the denial of a summary judgment motion and saying, without giving us notice or an opportunity, notice that the sufficiency of our contentions are at issue. Taking that statement and then saying, I've ruled against you, we're done with this, you can't bring this up at trial. That's the biggest problem here, and that's the thing that had our hands tied on the quotas so that we weren't able to demonstrate to the jury under any of our theories, no matter what we raised on summary judgment, we should not have been foreclosed. Can I ask why on the EFPP's issue, after the court did what it did on summary judgment, you filed a motion for reconsideration. But it seems like you still didn't use implied modification at that point. It seems like that would have been a good opportunity to do that. So there's the implied modification on the quotas, and there's implied modification on the EFPPs. At the time of the motion for reconsideration, the truth is that we didn't fully understand that the court was going to take that statement from the denial of its motion against us and then use it as, in effect, ruling against us. It was just a statement in her summary judgment order. So at the time of our motion for reconsideration, we knew that the court had made a ruling on EFPPs that we thought was wrong, again, based on the court's own theory that Guardian hadn't raised. But we didn't fully understand that the court had ruled, was using the denial of summary judgment, the statement in the denial, as a dispositive ruling against us. We didn't understand that until the court granted Guardian's motion in limine based on that statement, precluding us from offering any evidence or argument at trial that the quotas were in the aggregate and not preteritory. When they did that motion in limine, did you respond and say, wait a second, we didn't have an obligation to move for everything on summary judgment, this is now gotten, this argument you're making now? Yes, we said this is not procedurally correct. We said it then, and we said it then again. There was another motion the night before trial on demonstratives that we were permitted to use. And the court said, again, I'm relying on that statement I made in denying your motion to foreclose you. I've left you no leeway. And then you go from that, and then you go to the jury instruction where the court says, matter already decided. The jury doesn't get to decide this. That's the biggest, the most fundamental problem we have here. Thank you very much, Ms. Ball. Thank you, Your Honor. The case of PP Inc versus Guardian Protection Products is submitted. And we will stand not only in recess, but adjourn for the week. Thank you very much.
judges: Gould, Bea, Friedland